JOHN WOODRUFF v. VAN MILLER, JR.

No. 8223DC975

(Filed 4 October 1983)

**1. Rules of Civil Procedure § 50.4— judgment n.o.v.—when allowed**

Judgment notwithstanding the verdict should be entered for a defendant only when the evidence in its most favorable light to the plaintiff fails to establish an essential element of the claim asserted.

**2. Trespass § 2— elements of intentional infliction of mental distress**

The elements of intentional infliction of mental distress are (1) extreme and outrageous conduct, (2) which is intended to cause severe emotional distress, and (3) which does cause severe emotional distress.

**3. Trespass § 2— intentional infliction of mental distress—sufficiency of evidence**

Plaintiff's evidence was sufficient to support the jury's verdict finding that defendant intentionally inflicted mental distress upon plaintiff where it tended to show that defendant was hostile to plaintiff school superintendent because he had lost two bitterly contested lawsuits with plaintiff involving the disputed ownership and use of land; defendant discovered that, thirty years earlier, as a result of a prank plaintiff participated in with other college boys, plaintiff pled *nolo contendere* to aiding and abetting a service station break-in; defendant obtained from the clerk of court copies of the warrant, bond, preliminary hearing order, indictment, and prayer for judgment continued in plaintiff's case; defendant posted a copy of these papers on the "wanted" board of a post office, and when the postmaster disputed his right to post the papers, defendant compared plaintiff with unapprehended criminals who were sought for stealing; defendant approached one of the county's leading citizens at a service station and had him read a copy of the papers; several other copies of the papers were shown to teachers and students at a local high school; after learning about these occurrences, plaintiff could not sleep, was anxious, embarrassed, and humiliated, and had indigestion and internal bleeding because of a pancreatic condition which is aggravated by stress; and about two weeks after posting the papers in the post office, defendant expressed delight to the postmaster that plaintiff was having trouble sleeping.

APPEAL by plaintiff from *Kilby, Judge.* Judgment entered 6 May 1982 in District Court, ALLEGHANY County. Heard in the Court of Appeals 23 August 1983.

Plaintiff sued defendant for slander and intentional infliction of mental distress.

Plaintiff's evidence indicated the following: He has been superintendent of Alleghany County schools for seventeen years

and for many years before that was a high school principal or teacher. Defendant, hostile to plaintiff because of two bitterly contested lawsuits between them which defendant lost, involving the disputed ownership and use of land, discovered that thirty years earlier, as a result of a prank participated in with some other college boys, plaintiff was indicted in Orange County for aiding and abetting a service station break in, pleaded *nolo contendere* thereto, and paid the costs. From the clerk of court defendant obtained copies of the warrant, bond, preliminary hearing order, indictment, and prayer for judgment continued, requiring plaintiff to pay the costs and periodically report his good behavior to the court; defendant posted a copy of these papers in the Laurel Springs post office, on the "Wanted" board alongside posters for unapprehended criminals, and told the Postmaster, "[T]he rogue is still stealing and I intend to put a stop to it." When the Postmaster disputed his right to post the papers, defendant stated that since "Wanted" posters were put up for the federal government for persons stealing, then a "Wanted" poster should be put up for him, too. Shortly thereafter, defendant approached one of the county's leading citizens at a service station and had him read a copy of the papers. When that man told defendant he didn't approve of that kind of thing and "We all made mistakes when we was [sic] young," defendant declared, "I've got him now." Several other copies of the papers were seen by teachers and students at different places in the building and on the grounds of Alleghany High School.

After learning about these occurrences, plaintiff could not sleep, was anxious, embarrassed, and humiliated; he had indigestion and internal bleeding because a pancreatic condition he has had for a long time is aggravated by stress. About two weeks after posting the papers on the "Wanted" board in the post office, defendant told the Postmaster, "I hear that John Woodruff does not sleep well at night because he has been into so many things." About a week after that defendant stated to the Postmaster, "If John Woodruff has lost a half million dollars sleep for all the things he says he hasn't done, it would add up to a million for the things he has done." Two other prominent Alleghany citizens, one a former member of the County Board of Education and the other a schoolteacher, participated in the same college days' misconduct that plaintiff did, but neither defendant nor anyone else had ever circulated copies of their records.

Defendant offered no evidence.

The jury found that defendant had not slandered plaintiff, but that he had intentionally inflicted mental distress upon him, and awarded plaintiff $1 in compensatory damages and $20,000 in punitive damages. Judgment notwithstanding the verdict was entered for the defendant by the court.

*Dan R. Murray for plaintiff appellant.*

*No brief filed for defendant appellee.*

PHILLIPS, Judge.

**[1-3]** Judgment notwithstanding the verdict should be entered for a defendant only when the evidence in its most favorable light to the plaintiff fails to establish an essential element of the claim asserted. *Potts v. Burnette,* 301 N.C. 663, 273 S.E. 2d 285 (1981). The elements of intentional infliction of mental distress are (1) extreme and outrageous conduct, (2) which is intended to cause severe emotional distress, and (3) does cause severe emotional distress. *Dickens v. Puryear,* 302 N.C. 437, 276 S.E. 2d 325 (1981). The record contains plenary evidence as to each of these elements, and under our system, therefore, the plaintiff's rights and the defendant's liability were for the jury to decide, not the court. Thus, the judgment to the contrary must be and is set aside.

That defendant's conduct, as recorded, was intended to cause plaintiff severe mental distress and in fact did so is so obviously inferable, it need not be discussed; and that defendant's conduct was extreme and outrageous is equally plain.

So far as the evidence reveals: At the time defendant acted, plaintiff's record was not being considered or reviewed by any person or agency for any reason or purpose; no one but defendant was then interested in plaintiff's background, and defendant's concern was only because of animosity and spite. Defendant's consuming animus against the plaintiff, the lengths he went to in getting copies of the records, the truculent, vindictive methods used in circulating them, the outrageous comparison of a minor transgressor, who long since paid his debt to society, to dangerous criminals that have escaped apprehension, his delight in the plaintiff being unable to sleep, all indicate a calculated, persistent plan to disturb, humiliate, harass, and ruin plaintiff for no

purpose but defendant's own spiteful satisfaction. Fortunate it is for our people and society that such maliciously destructive and disruptive conduct is regarded as extreme and outrageous — rather than normal and acceptable — and that our law provides an orderly way for the community to disapprove of it and compensate those victimized by it.

Reversed and remanded with instructions to enter judgment on the verdict as rendered by the jury.

Reversed and remanded.

Judges HEDRICK and WELLS concur.