J. ADAM ABRAM, WILLIAM L. CASSELL AND JOHN ENGLERT, D/B/A ACE CHEMICAL DEPENDENCY SERVICES, PLAINTIFFS v. CHARTER MEDICAL CORPORATION OF RALEIGH, INC., DEFENDANT

No. 9010SC140

(Filed 4 December 1990)

1. Limitation of Actions § 4.6 (NCI3d) — certificate of need — agreement not to contest — breach — statute of limitations

Plaintiff was barred by the statute of limitations from bringing an action alleging breach of an agreement to refrain from further challenges to ACE's certificate of need where the agreement was breached, if at all, on 18 April 1985 and plaintiff did not bring its breach of contract action until 1 August 1988. The statute of limitations for contract actions is three years. N.C.G.S. § 1-52(1) (1983).

Am Jur 2d, Limitation of Actions § 92.

2. Malicious Prosecution § 12 (NCI3d) — contested certificate of need — malicious prosecution — summary judgment for defendant

The trial court did not err by granting summary judgment for defendant on a malicious prosecution claim arising from a contested certificate of need where plaintiff did not allege special damages, one of the elements of malicious prosecution. Liquidated damages for breach of a contract are not special damages resulting from the alleged malicious prosecution; furthermore, the record reveals no factual dispute as to whether special damages existed.

Am Jur 2d, Malicious Prosecution §§ 10, 11.

3. Unfair Competition § 1 (NCI3d) — contested certificate of need — not unfair competition

The trial court properly granted defendant's motion for dismissal under N.C.G.S. § 1A-1, Rule 12(b)(6) of defendant's unfair and deceptive trade practices claim arising from a contested certificate of need. The General Assembly intended to exclude from the application of N.C.G.S. § 75-1.1 professional services rendered by a member of a learned profession such as a professional health care provider.

Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices § 735.

ABRAM v. CHARTER MEDICAL CORP. OF RALEIGH

[100 N.C. App. 718 (1990)]

Judge DUNCAN concurred in this opinion prior to 29 November 1990.

APPEAL by plaintiffs from judgment entered 4 August 1989 by *Judge Henry W. Hight, Jr.,* in WAKE County Superior Court. Heard in the Court of Appeals 30 August 1990.

*Tharrington, Smith & Hargrove, by Richard A. Schwartz and Douglas A. Ruley, for plaintiff appellants.*

*Parker, Poe, Adams & Bernstein, by Robert W. Spearman, Renee J. Montgomery and John J. Butler, for defendant appellee.*

COZORT, Judge.

The owners of ACE Chemical Dependency Services (hereinafter ACE or plaintiff) initiated this action against Charter Medical Corporation of Raleigh (hereinafter Charter or defendant) on 1 August 1988. ACE asserted claims for breach of contract, fraud, attempted monopolization, abuse of civil process, malicious prosecution and unfair and deceptive trade practices. The trial court granted defendant's Rule 12(b)(6) motion to dismiss plaintiff's unfair and deceptive trade practices claim and dismissed on summary judgment the rest of plaintiff's claims. Plaintiff appeals. We affirm the dismissal of all claims.

In North Carolina no person may develop a new institutional health service without first obtaining a certificate of need (hereinafter CON) from the Department of Human Resources (hereinafter Department). N.C. Gen. Stat. § 131E-178(a) (1988). In 1982, ACE and Charter, along with several other organizations, submitted applications for a CON to provide chemical dependency treatment facilities in the Wake County area. In the fall of 1982, the Department approved Charter's application. ACE contested this approval and pursued its administrative remedies.

In 1983 the Department determined that additional chemical dependency facilities were needed. ACE submitted an application for the CON. ACE planned to lease the facility to another organization, CHAPS Health Services, Inc. (hereinafter CHAPS). Charter then opposed ACE's new application and pursued its administrative remedies. Thus, while ACE was opposing Charter's application in a contested case hearing, Charter was opposing ACE's through an identical procedure. However, on 15 April 1985, the parties

entered into a Settlement Agreement which was to settle the parties' "interests and claims with regard to the projects." ACE agreed to cease its opposition to Charter's project. In return, Charter agreed to cease its opposition to ACE's and CHAPS' pending application and not to contest the CON if it was awarded to ACE.

Over the next two years, Charter developed its project while ACE suffered a number of pre-construction delays. ACE attempted to enter into a financing relationship with American Treatment Centers, Inc. (hereinafter ATC). Pursuant to the Settlement Agreement, ACE dismissed its contested case hearing regarding Charter's development. On 18 April 1985, Charter wrote to the CON section of the Department requesting that the project proposed by ACE, CHAPS and ATC be subjected to a full certificate of need review.

The Department viewed ACE's new financing relationship as a CON transfer, a decision which would have necessitated the withdrawal of the first CON and a full, lengthy CON review. ACE proposed a new financing relationship, which the Department eventually found acceptable and extended the timetable on ACE's CON. Charter continued to raise questions about ACE's CON by writing to the Department on 31 July 1985 and 3 September 1985. On 1 May 1986, Charter filed with the Department a formal petition alleging ACE had unlawfully transferred its certificate. When that petition was denied, Charter filed in superior court on 11 July 1986 a Petition for a Contested Case Hearing. Charter also filed in superior court a Petition for Judicial Review and Complaint. The superior court filings were ultimately resolved in ACE's favor, and the ACE project was completed and began operation in 1986.

On 1 August 1988, plaintiff filed this action, basing its claims upon Charter's efforts to secure full CON review of the proposed project after ACE changed its financing arrangement.

On appeal, plaintiff contests the trial court's dismissal of the unfair and deceptive trade practices claim and the granting of summary judgment for defendant on the breach of contract claim and the malicious prosecution claim. We shall address the breach of contract claim first.

[1] Plaintiff contends that the letter and the spirit of the settlement agreement required Charter to refrain from any further challenges to ACE's certificate of need and that Charter's letters, administrative petitions and judicial petitions violated the agree-

ABRAM v. CHARTER MEDICAL CORP. OF RALEIGH

[100 N.C. App. 718 (1990)]

ment. Defendant argues that the statute of limitations bars ACE's contract claim. We agree with defendant.

The statute of limitations for contract actions is three years. N.C. Gen. Stat. § 1-52(1) (1983). The statute begins to run when the claim accrues; with a breach of contract action, the claim accrues upon breach. *Pearce v. N.C. Hwy. Patrol Vol. Pledge Comm.*, 310 N.C. 445, 448, 312 S.E.2d 421, 424 (1984).

The controlling case is *Parsons v. Gunter*, 266 N.C. 731, 147 S.E.2d 162 (1966). In that case plaintiff Parsons and defendant Gunter agreed in April 1959 that "they would work jointly to develop a machine known as a 'cotton card drive'." *Id.* at 731, 147 S.E.2d at 163. The parties agreed that they would each "receive one-half of the profits from sales of the machines." *Id.* Thereafter, defendant sold some of the machines. In May 1960, plaintiff demanded an accounting of the proceeds defendant received; defendant told plaintiff that there was " 'no room for [plaintiff] in the sale of [the] card drives.' " *Id.* at 733, 147 S.E.2d at 164. Our Supreme Court held that in May 1960 Gunter had disclaimed his obligation to pay part of the proceeds to plaintiff and that "[t]his disavowal started the statute of limitations to run." *Id.* Therefore, Parsons' right to maintain the action was barred since more than three years elapsed since the date plaintiff was put on notice of Gunter's breach and the institution of the cause of action. *Id.*

In the present case, the agreement, if breached at all, was breached initially on 18 April 1985. On that date, Charter's attorney wrote the chief of the CON section and requested a full review of the new arrangement proposed by CHAPS, ACE, and ATC. In a letter to Charter's attorney, ACE itself declared the 18 April letter to be a breach of the settlement agreement. Thus, according to *Parsons*, if a claim for breach of contract arose, it did so on 18 April 1985. ACE did not bring its breach of contract action until 1 August 1988 and is thus barred by the statute of limitations.

[2] Plaintiff's next argument is that, since Charter's administrative and judicial petitions were filed in the absence of or contrary to the governing statutes and regulations and jeopardized a CON, the trial court should have denied defendant's motion for summary judgment as to plaintiff's malicious prosecution claim. We do not agree.

In North Carolina, a claim of malicious prosecution requires proof of four elements: (1) that the defendant initiated the proceedings, (2) that the defendant did so maliciously and without probable cause, (3) that the proceeding terminated in plaintiff's favor, and (4) that there are special damages beyond the ordinary expense and inconvenience of litigation. *Stanback v. Stanback*, 297 N.C. 181, 203, 254 S.E.2d 611, 625 (1979). In the present case, one of the elements plaintiff must prove is special damages. Plaintiff has forecast no evidence demonstrating special damages as required by *Stanback*; plaintiff has merely referred to the liquidated damages set forth in the agreement. Liquidated damages for breach of a contract are not special damages resulting from the alleged malicious prosecution. Furthermore, the record reveals no factual dispute as to whether special damages existed. Thus, summary judgment for the defendant on this issue was appropriate.

[3] Finally, plaintiff maintains that the trial court's dismissal of the unfair and deceptive trade practices claim was erroneous. In the complaint, plaintiff alleges that the actions of defendant in seeking review of plaintiff's application for the CON constituted an unfair and deceptive trade practice in violation of N.C. Gen. Stat. § 75-1.1. In response, defendant argues that § 75-1.1(b) exempts professional services rendered by a member of a learned profession and that it is exempted as a professional health care provider. We find merit to defendant's argument.

In an action which stemmed from a hospital's denial of hospital staff privileges to two doctors, a panel of this Court concluded that the "consideration of whom to grant hospital staff privileges is a necessary assurance of good health care; certainly, this is the rendering of 'professional services' which is now excluded from the aegis of G.S. 75-1.1." *Cameron v. New Hanover Memorial Hosp.*, 58 N.C. App. 414, 447, 293 S.E.2d 901, 921, *disc. review denied, appeal dismissed*, 307 N.C. 127, 297 S.E.2d 399 (1982). We find that the rationale of *Cameron* applies here; the General Assembly intended to exclude such professional services from the application of § 75-1.1. Under North Carolina's CON law, an applicant seeking to develop a health service facility must meet certain criteria. *See* N.C. Gen. Stat. § 131E-183 (1988). Defendant, a member of the health care community, was requesting that ACE's application be subjected to scrutiny before ATC, the organization which would run the chemical dependency treatment facility, was admitted to

the community. These actions do not give rise to a claim under § 75-1.1. Thus, the trial court properly dismissed plaintiff's claim.

In conclusion, we find that the trial court's orders dismissing this action were proper.

Affirmed.

Judges ORR and DUNCAN concur.

Judge DUNCAN concurred in this opinion prior to 29 November 1990.