LINDA BURGESS, JOY CLEMENT, BONNIE EDDLEMAN, META FISHER, TERRY KESLER, TOMMY KNOX, GENE MOORE and MARK SIDES, Plaintiff-Appellants v. MERLE RUDY BUSBY, Defendant-Appellee

No. COA99-1439

(Filed 20 March 2001)

**1. Emotional Distress— intentional infliction—doctor's publication of jurors' names to medical providers—motion to dismiss improperly granted**

The trial court erred by granting defendant doctor's motion to dismiss plaintiffs' claim for intentional infliction of emotional distress based on defendant's publication of plaintiffs' names in a written letter to every physician's mail distribution box at Rowan Regional Medical Center after plaintiffs served as jurors in a medical malpractice case that found a doctor guilty of negligence, because: (1) plaintiffs' names were not revealed to the medical community pursuant to a statutory requirement as a part of the state's public policy; (2) plaintiffs' names were not reported to a public agency, but to the practitioners who were providing medical care to plaintiffs and their families; (3) the method by which defendant used this public information with an alleged malicious intent of interfering with plaintiffs' primary care could be considered extreme conduct; and (4) the complaint sufficiently alleges defendant's conduct as extreme and outrageous by the specific allegation that defendant interfered with plaintiffs' relationships with their primary medical practitioners.

**2. Torts, Other— outrage—not recognized in North Carolina**

The trial court properly dismissed plaintiffs' claim for the tort of outrage based on defendant's publication of plaintiffs' names in a written letter to every physician's mail distribution box at Rowan Regional Medical Center after plaintiffs served as jurors in a medical malpractice case that found a doctor guilty of negligence, because North Carolina courts have not recognized this tort and the Court of Appeals declines to do so under the facts of this case.

**3. Wrongful Interference-tortious interference with contractual relationship— no showing of monetary damages or actual pecuniary harm**

The trial court did not err by dismissing plaintiffs' tortious interference with a contractual relationship claim based on de-

fendant's publication of plaintiffs' names in a written letter to every physician's mail distribution box at Rowan Regional Medical Center after plaintiffs served as jurors in a medical malpractice case that found a doctor guilty of negligence, because plaintiffs have not sufficiently alleged how defendant's interference with plaintiffs' physician-patient relationships resulted in monetary damages or actual pecuniary harm to plaintiffs.

**4. Wrongful Interference— interference with prospective contractual relationships—not recognized in North Carolina**

The trial court did not err by dismissing plaintiffs' interference with prospective contractual relationships claim based on defendant's publication of plaintiffs' names in a written letter to every physician's mail distribution box at Rowan Regional Medical Center after plaintiffs served as jurors in a medical malpractice case that found a doctor guilty of negligence, because: (1) this action does not exist in North Carolina; and (2) plaintiffs have not alleged any particular prospective relationships with which defendant tortiously interfered.

**5. Wrongful Interference— interference with a fiduciary relationship—no showing of cause of action for physician-patient relationship**

The trial court did not err by dismissing plaintiffs' interference with a fiduciary relationship claim based on defendant's publication of plaintiffs' names in a written letter to every physician's mail distribution box at Rowan Regional Medical Center after plaintiffs served as jurors in a medical malpractice case that found a doctor guilty of negligence, because plaintiffs have not cited any case law that establishes a cause of action for interference with a physician-patient relationship.

**6. Torts, Other— intrusive invasion of privacy—publication of jurors' names—dismissal proper**

The trial court did not err by dismissing plaintiffs' intrusive invasion of privacy claim based on defendant's publication of plaintiffs' names in a written letter to every physician's mail distribution box at Rowan Regional Medical Center after plaintiffs served as jurors in a medical malpractice case that found a doctor guilty of negligence, because: (1) plaintiffs have not alleged that the information published was wrongfully obtained or that

BURGESS v. BUSBY

[142 N.C. App. 393 (2001)]

defendant committed the kind of intrusion intrinsic to this tort; and (2) defendant did not have to intentionally intrude upon the private records of plaintiffs to obtain the published information since plaintiffs' names as jurors were part of the public record with no expectation of privacy.

7. **Unfair Trade Practices— medical professional providing letter to other medical professionals to discourage health care to plaintiffs—exception for professional services rendered by members of a learned profession**

The trial court did not err by dismissing plaintiffs' unfair and deceptive trade practices claim under N.C.G.S. § 75-1 based on defendant's publication of plaintiffs' names in a written letter to every physician's mail distribution box at Rowan Regional Medical Center after plaintiffs served as jurors in a medical malpractice case that found a doctor guilty of negligence, because this case falls within the exception to N.C.G.S. § 75-1.1(b) since it is a matter affecting the professional services rendered by members of a learned profession.

8. **Torts, Other— common law obstruction of justice—error to dismiss claim**

The trial court erred by dismissing plaintiffs' claim for common law obstruction of justice even though the criminal statute of N.C.G.S. § 14-225.2 defining obstruction of justice through harassment and communication with jurors has been enacted, because: (1) the North Carolina Supreme Court has stated that the statute did not abrogate the common law offense of obstruction of justice; (2) plaintiffs' complaint sufficiently alleges a cause of action for common law obstruction of justice when it asserts that defendant alerted health care providers to the names of the jurors in retaliation for their verdict, this retaliation was designed to harass plaintiffs, and defendant's conduct was meant to obstruct the administration of justice in the county; and (3) the complaint also alleges all the necessary elements of obstructing justice through harassment of and communication with jurors under N.C.G.S. § 14-225.2.

9. **Damages and Remedies— punitives—aggravating factor sufficiently alleged**

The trial court erred by concluding that plaintiffs did not sufficiently allege a claim for punitive damages under N.C.G.S. § 1D-15, because the aggravating factor required under N.C.G.S.

§ 1D-15 is sufficiently alleged in the complaint by plaintiffs' claim for intentional infliction of emotional distress.

**10. Constitutional Law— freedom of speech—doctor's letter publicizing jurors' names—not protected speech**

Defendant doctor's written letter publicizing plaintiffs' names to every physician's mail distribution box at Rowan Regional Medical Center after plaintiffs served as jurors in a medical malpractice case that found a doctor guilty of negligence is not protected speech under the United States or the North Carolina Constitutions, and is therefore, not a defense to the imposition of liability under the facts alleged by plaintiffs.

Appeal by plaintiffs from order entered 23 August 1999 by Judge Peter McHugh in Rowan County Superior Court. Heard in the Court of Appeals 12 October 2000.

*Donaldson & Black, P.A., by Arthur J. Donaldson and Rachel S. Decker, for plaintiff-appellants.*

*Morris York Williams Surles & Barringer, by John H. Capitano and John P. Barringer, for defendant-appellee.*

McGEE, Judge.

Plaintiffs filed a complaint against defendant on 13 May 1999 alleging claims for intentional infliction of emotional distress, outrage, interference with contractual and fiduciary relationships, vexatious intrusive invasion of privacy, unfair and deceptive trade practices, common law obstruction of justice, and punitive damages. Defendant filed an answer on 21 July 1999, including a motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6). Following a hearing on defendant's motion to dismiss, the trial court entered an order on 23 August 1999 dismissing plaintiffs' complaint. Plaintiffs appeal.

Plaintiffs allege in their complaint that they are eight of the former jurors in a medical malpractice case filed in Rowan County Superior Court against defendant and other medical providers. The complaint alleges the jury in the medical malpractice case rendered a verdict in 1998 finding that defendant was not negligent but that his fellow physician in the medical malpractice case was negligent and awarded $150,000 to the plaintiffs in that case.

**BURGESS v. BUSBY**

[142 N.C. App. 393 (2001)]

Plaintiffs allege that on or about 14 May 1998, defendant placed, or caused to be placed, a written communication in every physician's mail distribution box at Rowan Regional Medical Center. Plaintiffs allege that this letter was received by every practitioner at the hospital with staff privileges. Plaintiffs allege this letter stated:

Rudy Busby, M.D. FACS
901 West Henderson Street
Salisbury, N.C.
May 14, 1998

Dear Colle[a]gues:

Please be appraised [sic] of the following:

People who have sued doctors[:]
Daniel W. Wright, Jr., Charlotte, N.C.
Ashley D. Wright, Stanley, N.C.

Jurors who have found a doctor guilty[:]
Adams, Billy [] [address]
Bowman, Charles [] [address]
Burgess, Linda [] [address]
Clement, Joy [] [address]
Eddleman, Bonnie [] [address]
Fisher, Meta [] [address]
Kesler, Terry [] [address]
Knox, Tommy [] [address]
Moore, Gene [] [address]
Pressley, Anita [] [address]
Sides, Mark [] [address]
Wade, Helen [] [address]

Others of whom I am leery[:]
Mr. & Mrs. John Bennet Parker [address]
Elizabeth Parker Wright [address]
Betty Dan Spencer [address]
Judy Davis [address]

I am now back and offering a full line of General, Vascular, and Thoracic Surgery!

/Signed/ Rudy

BURGESS v. BUSBY

[142 N.C. App. 393 (2001)]

Following each juror's name, the letter included the address of each juror. Plaintiffs allege that the names listed under defendant's category of "People who have sued doctors" were the plaintiffs in defendant's malpractice case; that the names listed under "Jurors who have found a doctor guilty" were the jurors in the medical malpractice case, including plaintiffs in the present case; and the names listed under "Others of whom I am leery" were the plaintiffs' witnesses in the medical malpractice case.

Plaintiffs' complaint alleges that defendant maliciously distributed the letter identifying plaintiffs, other jurors, and the witnesses in the medical malpractice case to all of the admitting medical staff at the only hospital that serves Rowan County, for the purpose of influencing the present and future medical care of the people identified in the letter. Plaintiffs allege that "the practitioners who [received the letter] provide medical care to residents of Rowan County including plaintiffs." As a result of the letter, plaintiffs allege that: they "fear that in emergency and non-emergency situations . . . they will be refused medical treatment," or that their medical practitioners will "sever the doctor-patient relationship," and that the letter will become a part of their medical files causing difficulty in "obtaining health insurance coverage in the future[.]" Plaintiffs also allege that they "fear further severe emotional distress" if called to serve on a jury again, because they will be exposed "to further harassment by litigants[.]"

The essential question in reviewing a motion to dismiss under N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) is

> whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory. The complaint must be construed liberally, and the court should not dismiss the complaint unless it appears that the plaintiffs could not prove any set of facts in support of their claim which would entitle them to relief.

*Lynn v. Overlook Development*, 328 N.C. 689, 692, 403 S.E.2d 469, 471 (1991) (citations omitted); *see Benton v. Construction Co.*, 28 N.C. App. 91, 220 S.E.2d 417 (1975). We therefore apply these principles to each of the claims alleged by plaintiffs in their complaint.

BURGESS v. BUSBY

[142 N.C. App. 393 (2001)]

I.

**[1]** Plaintiffs first argue that the trial court erred in dismissing their claim for intentional infliction of emotional distress (IIED). The essential elements of intentional infliction of emotional distress are "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress[.]" *Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981). A complaint is adequate, under notice pleading, if it gives a defendant sufficient notice of the nature and basis of the plaintiff's claim and allows the defendant to answer and prepare for trial. *Redevelopment Comm. v. Grimes*, 277 N.C. 634, 178 S.E.2d 345 (1971).

It is initially a question of law whether the alleged conduct on the part of the defendant "may reasonably be regarded as extreme and outrageous[.]" *Briggs v. Rosenthal*, 73 N.C. App. 672, 676, 327 S.E.2d 308, 311, *cert. denied*, 314 N.C. 114, 332 S.E.2d 479 (1985). The alleged conduct in an IIED claim must "exceed[] all bounds of decency tolerated by society[.]" *West v. King's Dept. Store, Inc.*, 321 N.C. 698, 704, 365 S.E.2d 621, 625 (1988).

Plaintiffs contend that defendant's publication of their names is similar to the circumstances in *Woodruff v. Miller*, 64 N.C. App. 364, 307 S.E.2d 176 (1983). In *Woodruff*, the defendant was hostile to the plaintiff because of the loss of two bitterly contested lawsuits. In the present case, as in *Woodruff*, defendant was involved in a prior lawsuit. The *Woodruff* Court found that the defendant's act of obtaining the criminal juvenile records of the plaintiff, and then circulating a copy of these records throughout the community, was extreme and outrageous conduct. *Id.* at 366-67, 307 S.E.2d at 178. The Court held that the defendant's attempt to "ruin plaintiff for no purpose but defendant's own spiteful satisfaction" was "disruptive conduct . . . regarded as extreme and outrageous-rather than normal and acceptable[.]" *Id.*

Defendant cites *Dobson v. Harris*, 134 N.C. App. 573, 521 S.E.2d 710 (1999), *rev'd on other grounds*, 352 N.C. 77, 530 S.E.2d 829 (2000) to assert that "the complaint fails to allege conduct that is extreme and outrageous[.]" Our Court in *Dobson* found that although the defendant may have "exaggerated or fabricated the events [of child abuse that] she reported to DSS, the report served only to initiate an investigatory process" by DSS, and therefore the alleged conduct was not outrageous. *Id.* at 578-79, 521 S.E.2d at 715. In addition, our Supreme Court noted in its review of *Dobson* that "N.C.G.S. § 7A-543

(now N.C.G.S. § 7B-301) imposes an affirmative duty for anyone with 'cause to suspect' child abuse or neglect to report that conduct to the department of social services." *Dobson*, 352 N.C. at 80-81, 530 S.E.2d at 834.

The complaint in the case before us alleges that defendant sent a letter to each private medical practitioner with privileges at the only hospital in Rowan County, naming plaintiffs as those "who have found a doctor guilty[.]" Unlike *Dobson*, plaintiffs' names were not revealed to the medical community pursuant to a statutory requirement and as a part of the state's public policy. In fact, the complaint alleges that plaintiffs' names were not reported to a public agency, but to the practitioners who were providing medical care to plaintiffs and their families.

Plaintiffs allege defendant's letter labels plaintiffs as "Jurors who have found a doctor guilty" and lists the full name and address of each of the jurors, including those of plaintiffs. Defendant contends that the names of the jurors were part of the public record and not privileged information. However, plaintiffs assert that it is the method by which defendant used this information, with an alleged malicious intent of interfering with plaintiffs' primary health care, that is the basis of their claim. These facts are comparable to the actions of the defendant in *Woodruff*, who published the plaintiff's juvenile court record, which was part of the public record. The Court found in *Woodruff* that the malicious use of the information was extreme conduct. *Woodruff*, 64 N.C. App. at 366, 307 S.E.2d at 178.

Although defendant's letter may not subject plaintiffs to public ridicule as in *Woodruff*, the complaint alleges the letter does subject plaintiffs to prejudice by the physicians in their local health care system. Plaintiffs' allegations that defendant's action in writing a letter specifying names and addresses of Rowan County residents who performed their civic duty as jurors and in distributing the letter to every medical practitioner with hospital admitting privileges in Rowan County sufficiently alleges extreme and outrageous conduct. In addition, plaintiffs contend the language of defendant's letter reveals his malicious intent as he groups plaintiffs with those "who have sued doctors" and "Others of whom I am leery." Further, defendant is alleged to have specifically submitted this letter to a group of health care professionals who were part of the primary care physicians for plaintiffs. Plaintiffs have sufficiently alleged that defendant's conduct was intentional.

Defendant asserts that plaintiffs' complaint is based on conclusory allegations and not on factual allegations as required by *Venable v. GKN Automotive*, 107 N.C. App. 579, 421 S.E.2d 378 (1992). In *Venable*, the plaintiff's complaint asserted that his termination from employment "caused him great mental anguish and distress and . . . damaged him greatly in his relationships with his acquaintances and peers in the community, and . . . cost him the wages and benefits of his position." *Id.* at 584, 421 S.E.2d at 381. Our Court determined that a cause of action for intentional infliction of emotional distress had not been established for failure "to allege sufficient facts" and that "plaintiff's allegations are conclusory in nature and fail to allege facts sufficient to constitute a claim[.]" *Id.* However, the complaint before us specifically alleges that

> [p]laintiffs fear that in emergency and non-emergency situations, they and members of their families will be refused medical treatment by the medical practitioners to whom defendant Busby sent the communication, the practitioners who provide medical care to residents of Rowan County including plaintiffs. Plaintiffs also feared and continue to fear that the practitioners above described will sever the doctor-patient relationship with the plaintiffs because of the above-described communication. Furthermore, plaintiffs fear that retaining present health insurance coverage or obtaining health insurance coverage in the future will be impaired by reason of [defendant's letter] appearing in their medical files . . . . Knowing that they may be recalled for jury duty plaintiffs also fear further severe emotional distress by serving on a jury again[.]

An allegation by plaintiffs of emotional distress caused by defendant's interference with plaintiffs' relationship with their primary medical practitioners is specifically set forth in the complaint. The complaint sufficiently alleges defendant's conduct as extreme and outrageous. The trial court erred in granting defendant's motion to dismiss plaintiffs' claim for intentional infliction of emotional distress.

## II.

[2] Plaintiffs argue that although the tort of outrage has not been established in North Carolina, under the facts of the present case, they urge our Court to follow the precedent established by the Arkansas Supreme Court. We agree that the tort of outrage has not been recognized in North Carolina. *See Beasley v. National Savings Life Ins. Co.*, 75 N.C. App. 104, 330 S.E.2d 207 (1985), *disc. review*

*improv. allowed,* 316 N.C. 372, 341 S.E.2d 338 (1986). Plaintiffs ask our Court to rely on the Arkansas Supreme Court decisions in *McQuay v. Guntharp,* 963 S.W.2d 583 (Ark. 1998) and *Travelers Ins. Co. v. Smith,* 991 S.W.2d 591 (Ark. 1999) to determine that they have stated a claim for outrage.

In *McQuay,* the Arkansas Supreme Court determined that

> [t]o establish an outrage claim, a plaintiff must demonstrate the following elements: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was "extreme and outrageous," was "beyond all possible bounds of decency," and was "utterly intolerable in a civilized community"; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it.

*McQuay,* 963 S.W.2d at 585.

The Arkansas Supreme Court, in recognizing the separate tort of outrage, relied "in part on the teachings of Professor [William L.] Prosser[.] . . . 'According to [Prosser], the new tort consisted of intentional, outrageous infliction of mental suffering in the extreme form and that it resembled assault.' " *Id.* at 585 (citing *M.B.M. Co., Inc. v. Counce,* 596 S.W.2d 681, 686 (Ark. 1980)). The defendant medical doctor's tortious act in *McQuay* was improper physical touching of his female patients and violation by the defendant of trusted doctor-patient relationships. Defendant's actions in the case before us do not rise to the level of a personal assault.

In *Travelers Insurance,* the defendant delayed the autopsy of the plaintiff's husband's body and because of this delay the body was not embalmed and began to deteriorate. *Travelers,* 991 S.W.2d at 594. The court held that the defendant interfered with the sanctity of a family's right to bury its deceased but also stated it had "take[n] a strict approach and give[n] a narrow view to the tort of outrage." *Id.* at 596.

Our appellate Courts have not recognized the tort of outrage and we decline to do so under the facts before us. The trial court correctly dismissed this claim for relief. *Von Hagel v. Blue Cross and Blue Shield,* 91 N.C. App. 58, 64, 370 S.E.2d 695, 700 (1988).

BURGESS v. BUSBY

[142 N.C. App. 393 (2001)]

### III.

[3] Plaintiffs assert that the trial court erred in dismissing their claim for tortious interference with a contractual relationship. The elements of the tort of interference with contract are: (1) a valid contract between plaintiff and a third person that confers upon plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) the defendant acts without justification; and (5) the defendant's conduct causes actual pecuniary harm to plaintiff. *United Laboratories, Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988).

The complaint alleged that "[p]laintiffs each had relationships with medical practitioners to whom the [defendant's letter] was sent." Although a contract is not specifically pled, plaintiffs appear to be asserting that their patient-physician relationship with their own physicians is the contractual relationship with which defendant interfered. Plaintiffs rely on *Fowler v. Insurance Co.*, 256 N.C. 555, 124 S.E.2d 520 (1962), to assert that our Courts have recognized the tort of interference with a contract for personal services. In *Fowler*, the Supreme Court held that "[t]he right to recover damages resulting from a wrongful interference with a contract for personal services has long been recognized." *Id.* at 556, 124 S.E.2d at 521 (citations omitted).

The elements of tortious interference with a contract were first established in our state in *Childress v. Abeles*, 240 N.C. 667, 84 S.E.2d 176 (1954). *Childress* does not define the element of "actual damages." However, in our review of *Childress* and subsequent case law, damages in those tortious interference with contract cases were actual monetary damages. *Id.* at 676, 84 S.E.2d at 183 (the plaintiff had fully performed and was entitled to full commissions, and the defendants intentionally and without justification induced the defendant not to perform its contract with the plaintiff to the plaintiff's actual damage); *Lexington Homes Inc. v. W.E. Tyson Builders, Inc.*, 75 N.C. App. 404, 412, 331 S.E.2d 318, 323 (1985) (the defendant had to stop payment on $42,000 worth of checks and several checkholders filed liens against defendant's property when their checks were canceled, which tended to show that defendant was actually damaged in some pecuniary amount by the tort complained of); *Lenzer v. Flaherty*, 106 N.C. App. 496, 512, 418 S.E.2d 276, 286 , *disc. review denied*, 332 N.C. 345, 421 S.E.2d 348 (1992) ("withdrawal of

supervision in fact caused the intended effect of plaintiff losing her employment, resulting in damage to plaintiff"); and *Barker v. Kimberly-Clark Corp.*, 136 N.C. App. 455, 462, 524 S.E.2d 821, 826 (2000) (summary judgment for defendants was error when the actions of the defendants caused the plaintiff to lose her employment with defendant corporation, resulting in damage to her).

In the present case, plaintiffs allege damage to their physician-patient relationships and seek damages in excess of $10,000. However, in the cases cited in plaintiffs' argument, actual damages were a monetary amount connected to a contract right. Plaintiffs have not sufficiently alleged how defendant's interference with plaintiffs' physician-patient relationships resulted in monetary damages or "actual pecuniary harm" to plaintiffs, which is a required element of tortious interference with contract. *See Polygenex Int'l, Inc. v. Polyzen, Inc.*, 133 N.C. App. 245, 252, 515 S.E.2d 457, 462 (1999) (actual damage required to state claim for tortious interference with contract).

[4] Plaintiffs also allege interference with prospective contractual relationships. In *EEE-ZZZ Lay Drain Co. v. N.C. Dept. of Human Resources*, 108 N.C. App. 24, 31, 422 S.E.2d 338, 343 (1992), *overruled on other grounds*, 347 N.C. 97, 489 S.E.2d 880 (1997), our Court held that "[w]e find no basis for believing that such a cause of action [interference with prospective contractual relations] even exists in North Carolina." Plaintiffs have not alleged any particular prospective relationships with which defendant tortiously interfered and the trial court did not err in dismissing plaintiffs' claim for interference with prospective contracts. *See Teleflex Info. Sys., Inc. v. Arnold*, 132 N.C. App. 689, 513 S.E.2d 85 (1999). We affirm the trial court's dismissal of the plaintiffs' tortious interference with contract claim.

IV.

[5] Plaintiffs next argue their complaint states a claim for interference with a fiduciary relationship.

Plaintiffs contend that our Courts have recognized a cause of action for assisting the breach of a fiduciary duty and that to state such a cause of action, the plaintiff must show that the defendant knew of the fiduciary relationship and aided and abetted the breach of the fiduciary duty. Plaintiffs allege that defendant knowingly interfered with the established fiduciary relationship between plaintiffs

and their physicians. Defendant argues it is doubtful that this tort exists in the form urged by plaintiffs.

Plaintiffs cite only *Tuttle v. Tuttle*, 146 N.C. 352, 59 S.E. 1008 (1907) in asserting a claim against defendant for tortious interference with a fiduciary relationship. In *Tuttle*, the plaintiffs filed an action to set aside a conveyance of real property, alleging the transfer was fraudulent. Plaintiffs' reliance on *Tuttle* is misplaced as the issue before the *Tuttle* Court was alleged fraud involving a fiduciary relationship and co-defendants who assisted the fiduciary in perpetrating a fraud upon the fiduciary's co-tenants.

Plaintiffs have not cited any case law that establishes a cause of action for interference with a physician-patient relationship. We affirm the trial court's dismissal of plaintiffs' claim for interference with a fiduciary relationship.

V.

**[6]** Plaintiffs further argue that their complaint states a claim for intrusive invasion of privacy. Our Court has recognized the intrusive invasion into the private affairs of another as a valid cause of action.

> "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."

*Miller v. Brooks*, 123 N.C. App. 20, 25-26, 472 S.E.2d 350, 354 (1996), *disc. review denied*, 345 N.C. 344, 483 S.E.2d 172 (1997) (quoting *Smith v. Jack Eckerd Corp.*, 101 N.C. App. 566, 568, 400 S.E.2d 99, 100 (1991)). However, North Carolina does not recognize a cause of action for the invasion of privacy by disclosure of private facts, *see Hall v. Post*, 323 N.C. 259, 372 S.E.2d 711 (1988), *rev'd on other grounds*, 323 N.C. 259, 372 S.E.2d 711 (1988), or invasion of privacy by placing a plaintiff in a false light before the public. *See Renwick v. News and Observer and Renwick v. Greensboro News*, 310 N.C. 312, 312 S.E.2d 405, *cert. denied*, 469 U.S. 858, 83 L. Ed. 2d 121 (1984).

We have held that " 'intrusion' as an invasion of privacy is [a tort that] . . . does not depend upon any publicity given a plaintiff or his affairs but generally consists of an intentional physical or sensory interference with, or prying into, a person's solitude or seclusion or his private affairs." *Hall*, 85 N.C. App. at 615, 355 S.E.2d at 823.

Specific examples of intrusion include "physically invading a person's home or other private place, eavesdropping by wiretapping or microphones, peering through windows, persistent telephoning, unauthorized prying into a bank account, and opening personal mail of another." *Id.*

Plaintiffs in this case allege that defendant provided their names to their primary medical providers characterizing them as the jurors who "found a doctor guilty" of negligence. Plaintiffs have not alleged that the information published was wrongfully obtained nor that defendant committed the kind of intrusion intrinsic to this tort. Defendant did not have to intentionally intrude upon the private records of plaintiffs to obtain the published information. Plaintiffs' names as jurors were part of the public record and therefore there is no expectation of privacy. The allegations in plaintiffs' complaint fail to state a claim for intrusive invasion of privacy and we affirm the trial court's dismissal of this cause of action.

## VI.

[7] We next address plaintiffs' unfair and deceptive trade practices claim under N.C. Gen. Stat. § 75-1. In order to establish a claim, plaintiffs must show (1) an unfair or deceptive act or practice, (2) in or affecting commerce, (3) which proximately caused actual injury to them. *Martin Marietta Corp. v. Wake Stone Corp.*, 111 N.C. App. 269, 432 S.E.2d 428 (1993), *aff'd*, 339 N.C. 602, 453 S.E.2d 146 (1995). N.C. Gen. Stat. § 75-1.1(b) (1999) defines commerce as "all business activities however denominated, but does not include professional services rendered by a member of a learned profession."

Plaintiffs rely on *Abram v. Charter Medical Corp. of Raleigh*, 100 N.C. App. 718, 398 S.E.2d 331 (1990), *disc. review denied*, 328 N.C. 328, 402 S.E.2d 828 (1991), in asserting that the exception to the statute dealing with professional services rendered by a member of a learned profession applies "where the action taken was necessary for the assurance of good health care." Upon examination of *Abram*, this is a misreading of our Court's holding. In *Abram*, we found that the medical defendant's efforts to block the certification of the plaintiff's medical facility was exempt from N.C.G.S. § 75-1.1(b) because both the plaintiff and the defendant were part of the health care community. *Id.* at 722-23, 398 S.E.2d at 334. Plaintiffs state that our Court in *Abram* applied the N.C.G.S. § 75-1.1(b) exception "because the action affected health [care] that people would receive at the competitor's facility." Plaintiffs further argue that the N.C.G.S. § 75-1.1(b) excep-

tion does not apply to their claim because defendant "was not trying to ensure that the jurors receive adequate health services; rather, he was attempting to prevent jurors' access to health care."

Defendant in this case, a medical professional, provided a letter to other medical professionals in his county with the alleged intention of discouraging them from providing professional health care to plaintiffs. As in *Abram*, this is a matter affecting the professional services rendered by members of a learned profession and therefore falls within the exception in N.C.G.S. § 75-1.1(b). *See Cameron v. New Hanover Memorial Hospital*, 58 N.C. App. 414, 293 S.E.2d 901, *disc. review denied*, 307 N.C. 127, 297 S.E.2d 399 (1982); *Reid v. Ayers*, 138 N.C. App. 261, 531 S.E.2d 231 (2000). We affirm the trial court's dismissal of plaintiffs' complaint for unfair and deceptive trade practices.

## VII.

**[8]** Plaintiffs argue that their complaint states a cause of action against defendant for obstruction of justice. Plaintiffs argue that North Carolina recognizes the common law claim of obstruction of justice where the defendant acts in a manner that obstructs, impedes or hinders public or legal justice. In support of their argument, plaintiffs cite Article 30 of Chapter 14 of the N.C. General Statutes, a criminal statute defining obstruction of justice through harassment of and communication with jurors. N.C. Gen. Stat. § 14-225.2 (1999) states:

(a)  A person is guilty of harassment of a juror if he:

. . .

(2)  As a result of the prior official action of another as a juror in a grand jury proceeding or trial, threatens in any manner or in any place, or intimidates the former juror or his spouse.

(b)  In this section "juror" means a grand juror or a petit juror and includes a person who has been drawn or summoned to attend as a prospective juror.

(c)  A person who commits the offense defined in . . . subdivision (a)(2) of this section is guilty of a Class I felony.

As cited by plaintiffs, our Supreme Court stated in *In re Kivett*, 309 N.C. 635, 670, 309 S.E.2d 442, 462 (1983), that:

*Obstruction of justice is a common law offense in North Carolina.* Article 30 of Chapter 14 of the General Statutes does

not abrogate this offense. N.C. Gen. Stat. § 4-1 (1981). Article 30 sets forth specific crimes under the heading of *Obstructing Justice* , such as: . . . *N.C.G.S. 14-225.2, harassment of jurors*; [and] N.C.G.S. 14-226, intimidating witnesses. . . .

"At common law it is an offense to do any act which prevents, obstructs, impedes or hinders public or legal justice."

(first and third emphasis added).

In determining whether the common law offense of obstruction of justice remains a valid cause of action after the enactment of Article 30 of Chapter 14 of the General Statutes, we consider N.C. Gen. Stat. § 4-1 (1999) that provides:

All such parts of the common law as were heretofore in force and use within this State, or so much of the common law as is not destructive of, or repugnant to, or inconsistent with, the freedom and independence of this State and the form of government therein established, and which has not been otherwise provided for in whole or in part, not abrogated, repealed, or become obsolete, are hereby declared to be in full force within this State.

Our Supreme Court explicitly stated in *In re Kivett* that Article 30 of Chapter 14 did not abrogate the common law offense of obstruction of justice. *Kivett*, 309 N.C. at 670, 309 S.E.2d at 462.

Plaintiffs argue that our Supreme Court noted in *Henry v. Deen*, 310 N.C. 75, 310 S.E.2d 326 (1984), that the civil conspiracy claim the plaintiff alleged was a traditional obstruction of justice common law claim, except the conspiracy claim involved more than one wrongdoer. The Supreme Court stated "[t]he gravamen of the action is the resultant injury, and not the conspiracy itself." *Id.* at 87, 310 S.E.2d at 334, (citing *Shope v. Boyer*, 268 N.C. 401, 150 S.E.2d 771 (1966)). The complaint in *Henry* alleged the defendant doctors agreed to create and did create false and misleading entries in the plaintiff's medical chart and conspired to destroy or conceal the plaintiff's actual medical record and create a false one. The Court stated that if these acts were found to have occurred, they would be acts which "obstruct, impede or hinder public or legal justice and would amount to the common law offense of obstructing public justice." *Id.* (citing *In re Kivett*, 309 N.C. 635, 309 S.E.2d 442 (1983)). The Court stated that if an amendment to allege injury was allowed by the trial court to the complaints in *Henry*, the complaints would "set forth a claim in which the plaintiff alleged a conspiracy, wrongful acts and injuries

resulting from those acts. The claim, therefore, is legally sufficient to withstand a motion for dismissal pursuant to Rule 12(b)(6)." *In re Kivett*, 310 N.C. at 90, 310 S.E.2d at 336.

Plaintiffs' complaint sufficiently alleges a cause of action for common law obstruction of justice in that it alleges (1) defendant alerted health care providers to the names of the jurors in retaliation for their verdict; (2) this retaliation was designed to harass plaintiffs; and (3) defendant's conduct was meant to obstruct the administration of justice in Rowan County. The complaint also alleges all the necessary elements of obstructing justice through harassment of and communication with jurors. N.C.G.S. § 14-225.2 (1999). We reverse the trial court's dismissal of plaintiffs' claim for obstruction of justice against defendant.

## VIII.

**[9]** Plaintiffs assert their complaint states a claim for punitive damages under N.C. Gen. Stat. § 1D-15. N.C. Gen. Stat. § 1D-15 (1999) provides in part:

> (a) Punitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages were awarded:
>
> (1) Fraud.
>
> (2) Malice.
>
> (3) Willful or wanton conduct.

"Punitive damages are recoverable in tort actions only where there are aggravating factors surrounding the commission of the tort such as actual malice, oppression, gross and wilful wrong, insult, indignity, or a reckless or wanton disregard of plaintiff's rights." *Burns v. Forsyth Co. Hospital Authority*, 81 N.C. App. 556, 561, 344 S.E.2d 839, 844 (1986). Our Court held in *Brown v. Burlington Industries, Inc.*, 93 N.C. App. 431, 438, 378 S.E.2d 232, 236-37 (1989), *disc. review improv. allowed*, 326 N.C. 356, 388 S.E.2d 769 (1990) that one of the constituent elements in alleging a claim for intentional infliction of emotional distress is an "extreme and outrageous" act by defendant. "The existence of an outrageous act supports submission of an issue pertaining to punitive damages to the jury." *Id.*

In the case before us, plaintiffs' complaint sufficiently alleges a claim for intentional infliction of emotional distress. Therefore, the aggravating factor required under N.C.G.S. § 1D-15 is sufficiently alleged in the complaint to support a claim for punitive damages. We reverse the order of the trial court as to this cause of action.

IX.

**[10]** Plaintiffs' final argument is that defendant's letter is not protected speech under the United States or the North Carolina Constitutions and protected speech is therefore not a defense to the imposition of liability under the facts alleged by plaintiffs. Defendant counters that the communication to plaintiffs' physicians is protected speech under *Hall*. *Hall* specifically dealt with "invasion of privacy by public disclosure of true but 'private' facts." *Hall*, 323 N.C. at 270, 372 S.E.2d at 717. The claims in *Hall* were based upon two stories printed in *The Salisbury Post* which revealed private facts about an adoptive mother and child. The facts in the case before us are not based on the disclosure of private facts through publication and therefore *Hall* does not apply.

The United States Supreme Court in *Pennekamp v. Florida*, 328 U.S. 331, 90 L. Ed. 1295 (1946) stated that "[f]reedom of discussion should be given the widest range compatible with the essential requirement of the fair and orderly administration of justice." *Id.* at 347, 90 L. Ed. at 1303-04. "We must therefore turn to the particular utterances here in question and the circumstances of their publication to determine to what extent the substantive evil of unfair administration of justice was a likely consequence[.]" *Bridges v. California*, 314 U.S. 252, 271, 86 L. Ed. 192, 207-08 (1941).

We have already noted that defendant's letter is alleged in plaintiffs' complaint to be an obstruction of justice through harassment of a jury after its deliberation and verdict. Defendant's alleged attempt to interfere with plaintiffs' health care because the jury found a doctor had committed malpractice is not protected speech. "[W]e must weigh the impact of the words against the protection given by the principles of the First Amendment, as adopted by the Fourteenth[.]" *Pennekamp*, 328 U.S. at 349, 90 L. Ed. at 1305. Jury service is a public duty and is a "solemn obligation of all qualified citizens, and . . . excuses from the discharge of this responsibility should be granted only for reasons of compelling personal hardship[.]" N.C. Gen. Stat. § 9-6(a) (1999). Plaintiffs allege in their complaint that a citizen who

undertakes this public duty should be free from a personalized published harassment. We agree with plaintiffs' contention that defendant's communication is not protected speech.

In review, we affirm the trial court's dismissal of plaintiffs' claims for outrage, tortious interference with contract, interference with a fiduciary relationship, intrusive invasion of privacy, and unfair and deceptive trade practices. We reverse and remand the trial court's dismissal under Rule 12 (b)(6) of plaintiffs' claims for intentional infliction of emotional distress, common law obstruction of justice, and punitive damages.

Affirmed in part; reversed and remanded in part.

Judges WALKER and HORTON concur.

Judge HORTON concurred in this opinion prior to 8 February 2001.