BRYANT, Judge.
 

 *413
 
 Where the allegations in the complaint, taken as true, fail to indicate that defendant's conduct was extreme and outrageous or that it was reasonably foreseeable plaintiff would suffer severe emotional distress, we affirm the trial court's dismissal of the complaint seeking relief for intentional infliction of emotional distress or negligent infliction of emotional distress.
 

 On 24 February 2014, plaintiff Michael C. Piro filed a complaint in Mecklenburg County Superior Court seeking relief on the basis of negligent infliction of emotional distress, intentional infliction of emotional distress, and punitive damages. Plaintiff named as defendants Rebecca Hadden McKeever, L.C.S.W.; Cynthia L. Sapp, Ph.D.; Karen Barry, M.F.T., LMFT; and Davidson Counseling Associates. Defendant McKeever is a licensed clinical social worker, defendant Sapp a licensed clinical psychologist, and defendant Barry a licensed marriage and family therapist.
 

 In his complaint, plaintiff asserts that plaintiff and Karen Shapiro Piro (Shapiro) are the parents of three boys: Allen (then 14 years of age); Noah (then 12 years of age); and Michael (then 4 years of age).
 
 [1]
 
 On 28 June 2006, plaintiff filed a complaint raising issues of child custody, child support, equitable distribution, and interim distribution. On 16 November 2007, a custody order was entered awarding plaintiff and Shapiro joint legal and physical custody of Allen and Noah.
 
 [2]
 

 In April 2011, plaintiff's eldest child, Allen, began receiving services from defendant McKeever. Plaintiff alleges that the day after a 7 April 2011 meeting between defendant McKeever, Shapiro, and Shapiro's father, Shapiro contacted the Mecklenburg County Department of Social Services' Child Protective Services (DSS) and alleged that plaintiff had sexually assaulted Noah. DSS contacted the Huntersville Police Department (HPD), and both agencies conducted concurrent investigations into Shapiro's allegations. On 19 April 2011, HPD concluded that no probable cause existed to charge plaintiff. DSS likewise found the allegations against plaintiff to be unsubstantiated, and also closed its investigation.
 

 *414
 
 In May 2011, defendant McKeever conducted her first and second therapy sessions with Noah. Thereafter, Shapiro again contacted DSS and reported additional allegations of sexual abuse upon Noah by plaintiff. DSS declined to reopen its investigation into Shapiro's allegations, but HPD commenced a second investigation.
 

 On 9 June 2011, defendant McKeever conducted a forensic interview of Noah, and thereafter, Noah went to Pat's Place Child Advocacy Center, where a professional forensic
 
 *370
 
 interviewer sought specific details regarding sexual abuse perpetrated by plaintiff.
 

 On 27 June 2011, the Honorable Christy T. Mann entered an order that granted Shapiro sole custody of the children, directed plaintiff to vacate the marital residence, and prohibited plaintiff from having any contact with Allen, Noah, and Michael. Judge Mann's order that plaintiff have no contact with Allen, Noah, and Michael remained in effect from June 2011 through November 2013.
 

 In his complaint, plaintiff alleged that defendant McKeever's conduct and interview techniques were in contravention of the American Counseling Association Code of Ethics, and McKeever should have known that the use of such techniques substantially increased the risk of erroneous and unreliable results. Plaintiff alleges that defendant McKeever was an agent and/or servant of defendant Davidson Counseling Associates and that defendants Sapp and Barry directly participated in Noah's treatment by discussing, consulting, and supervising defendant McKeever's care of Noah. Plaintiff also asserts that "DSS, HPD, a court-appointed forensic custody evaluator, and[,] ultimately [,] the Judge presiding over the Domestic Action found the allegations of sexual abuse to be unsubstantiated," although nothing in the record before this Court supports such a finding by a judge. Plaintiff alleges that he has suffered severe emotional distress, including mental anguish, depression, stress, embarrassment, humiliation, concern for his sons, substantial monetary expenses, and other damages.
 

 Defendants McKeever, Barry, and Sapp filed individual answers to plaintiff's complaint, including a motion to dismiss plaintiff's claims. Defendant Davidson Counseling Associates also filed a motion to dismiss. On 2 September, 28 October, and 3 November 2014, the Honorable Robert C. Ervin, Judge presiding in Mecklenburg County Superior Court, entered orders granting defendants' individual motions to dismiss plaintiff's complaint with prejudice, pursuant to Rule 12(b)(6). In pertinent part, the trial court concluded that plaintiff's complaint failed to allege the "extreme and outrageous conduct" necessary to recover for
 
 *415
 
 intentional infliction of emotional distress and failed to establish that it was reasonably foreseeable defendant McKeever's conduct would cause plaintiff severe emotional distress as required to recover for a claim of negligent infliction of emotional distress. Plaintiff appeals only from the order granting defendant McKeever's motion to dismiss.
 

 _________________________
 

 On appeal, plaintiff raises the following issues: whether the trial court erred by concluding (I) that defendant McKeever's alleged conduct did not meet the threshold for extreme and outrageous; and (II) that the harm caused by defendant McKeever was unforeseeable.
 

 Standard of Review
 

 A pleading which sets forth a claim for relief, whether an original claim, counterclaim, crossclaim, or third-party claim shall contain ... [a] short and plain statement of the claim sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved showing that the pleader is entitled to relief[.]
 

 N.C. Gen.Stat. § 1A-1, Rule 8(a)(1) (2013). "Under the 'notice theory of pleading' a complainant must state a claim sufficient to enable the adverse party to understand the nature of the claim, to answer, and to prepare for trial."
 
 Ipock v. Gilmore,
 

 73 N.C.App. 182
 
 , 188,
 
 326 S.E.2d 271
 
 , 276 (1985) (citation omitted) (citing N.C. Gen.Stat. § 1A-1, Rule 8(a)(1) (1983) ;
 
 Sutton v. Duke,
 

 277 N.C. 94
 
 ,
 
 176 S.E.2d 161
 
 (1970) ). " 'While the concept of notice pleading is liberal in nature, a complaint must nonetheless state enough to give the substantive elements of a legally recognized claim or it may be dismissed under Rule 12(b)(6).' "
 
 Highland Paving Co., LLC v. First Bank,
 

 227 N.C.App. 36
 
 , 44,
 
 742 S.E.2d 287
 
 , 293 (2013) (quoting
 
 Raritan River Steel Co. v. Cherry, Bekaert & Holland,
 

 322 N.C. 200
 
 , 205,
 
 367 S.E.2d 609
 
 , 612 (1988) ).
 

 Our review of the grant of a motion to dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure is
 
 de novo.
 
 We consider whether the allegations
 
 *371
 
 of the complaint, if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory.
 

 Bridges v. Parrish,
 

 366 N.C. 539
 
 , 541,
 
 742 S.E.2d 794
 
 , 796 (2013) (citation and quotations omitted). " '[A] complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support
 
 *416
 
 of the claim.' "
 
 Acosta v. Byrum,
 

 180 N.C.App. 562
 
 , 567,
 
 638 S.E.2d 246
 
 , 250 (2006) (quoting
 
 Sutton,
 

 277 N.C. at 103
 
 ,
 
 176 S.E.2d at
 
 166 ).
 

 I
 

 Plaintiff argues that the trial court erred in dismissing his claim for intentional infliction of emotional distress. Plaintiff argues his complaint establishes conduct on the part of defendant McKeever that a jury could find extreme and outrageous. Specifically, plaintiff contends that defendant McKeever's conduct resulted in accusations that plaintiff sexually assaulted Noah and deprived plaintiff of companionship with his minor children for three years. We disagree.
 

 The tort of intentional infliction of emotional distress was formally recognized by our Supreme Court in
 
 Stanback v. Stanback,
 

 297 N.C. 181
 
 ,
 
 254 S.E.2d 611
 
 (1979), as noted in
 
 Dickens v. Puryear,
 

 302 N.C. 437
 
 , 446-47,
 
 276 S.E.2d 325
 
 , 331 (1981).
 

 This tort imports an act which is done with the intention of causing emotional distress or with reckless indifference to the likelihood that emotional distress may result. A defendant is liable for this tort when he desires to inflict severe emotional distress or knows that such distress is certain, or substantially certain, to result from his conduct or where he acts recklessly in deliberate disregard of a high degree of probability that the emotional distress will follow and the mental distress does in fact result.
 

 Dickens,
 

 302 N.C. at 449
 
 ,
 
 276 S.E.2d at 333
 
 (citations, quotations, and ellipsis omitted). "This tort ... consists of: (1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another."
 

 Id.
 

 at 452
 
 ,
 
 276 S.E.2d at 335
 
 .
 

 [Our Supreme Court has also] stated that the severe emotional distress required for [intentional infliction of emotional distress] is the same as that required for negligent infliction of emotional distress, which is:
 

 any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so.
 

 Holloway v. Wachovia Bank & Trust Co.,
 

 339 N.C. 338
 
 , 354-355,
 
 452 S.E.2d 233
 
 , 243 (1994) (citing
 
 Johnson v. Ruark Obstetrics & Gynecology
 

 *417
 

 Assoc.,
 

 327 N.C. 283
 
 , 304,
 
 395 S.E.2d 85
 
 , 97 (1990) ). "Conduct is extreme and outrageous when it exceeds all bounds usually tolerated by a decent society."
 
 Shreve v. Duke Power Co.,
 

 85 N.C.App. 253
 
 , 257,
 
 354 S.E.2d 357
 
 , 359 (1987) (citation and quotations omitted).
 

 In his complaint, plaintiff made the following assertions:
 

 9. Defendant McKeever is a Licensed Clinical Social Worker. Upon information and belief, Defendant McKeever was at all relevant times licensed to render services in the State of North Carolina under license/certification number C003301.
 

 ...
 

 16. Plaintiff's oldest son, [Allen], and middle son, [Noah] received services from Defendant McKeever from approximately April, 2011 through September 2013.
 

 17. During Defendant McKeever's treatment of [Allen] and [Noah], Defendant McKeever discussed, consulted with, and sought supervision from Defendant Sapp [, a licensed Clinical Psychologist,] and Defendant Barry[, a licensed Marriage and Family Therapist,] regarding [Defendant McKeever's] treatment of, at a minimum, [Noah].
 

 ...
 

 27. On or about May 19, 2011, Defendant McKeever met [Noah] for the first
 
 *372
 
 time. Defendant McKeever had a therapy session with [Noah] that day.
 

 28. On or about May 26, 2011, Defendant McKeever conducted a therapy session with [Noah].
 

 ...
 

 32. On June 9, 2011, Defendant McKeever conducted a therapy session with [Noah].
 

 33. Prior to June 9, 2011, [Noah] never reported to defendant McKeever that he had been the victim of any sexual abuse perpetrated by Plaintiff.
 

 34. At that June 9, 2011 therapy session, Defendant McKeever engaged in and conducted an interview of [Noah]. Defendant McKeever conducted that
 
 *418
 
 interview in the form of a forensic interview aimed at eliciting from [Noah] a report of sexual abuse.
 

 35. Defendant McKeever knew or should have known that she should not have conducted that June 9, 2011 forensic interview.
 

 ...
 

 42. Defendant McKeever's conduct and interview of [Noah] inappropriately used overly suggestive questioning, made over-interpretations, and otherwise employed means and methods known or that should have been known to produce inaccurate and unreliable results. Further, the conduct and interview engaged in by Defendant McKeever specifically targeted Plaintiff and/or was overly suggestive of improper behavior by Plaintiff. Defendants' subsequent conduct exacerbated the situation.
 

 ...
 

 46. Defendant McKeever had knowledge of the risks attendant to her conduct, including the risks that DSS and HPD would investigate and prohibit and/or limit Plaintiff's visitation, that Karen Shapiro would seek to limit and/or prohibit custody and visitation by Plaintiff, that the relationship between Plaintiff and the Boys would be adversely affected, that Plaintiff would sustain separation from the Boys, and that Plaintiff would suffer severe emotional distress and other damages.
 

 ...
 

 53. Since and as a result of Defendants' conduct, Plaintiff has suffered severe emotional distress.
 

 ...
 

 58. As a direct and proximate result of the acts and omissions of Defendants, Plaintiff has suffered and will continue to suffer severe emotional distress, including but not limited to mental anguish, depression, stress, embarrassment, humiliation, concern for his sons, substantial monetary expenses, and other damages to be proven at trial.
 

 *419
 
 Plaintiff makes conclusory allegations but fails to assert any facts depicting conduct by defendant McKeever that meet the threshold of extreme and outrageous conduct, that is, conduct "exceed[ing] all bounds usually tolerated by a decent society."
 
 Shreve,
 

 85 N.C.App. at 257
 
 ,
 
 354 S.E.2d at 359
 
 . Moreover, plaintiff fails to assert any facts that would establish defendant McKeever knew or had a substantial certainty plaintiff would suffer severe emotional distress as a result of McKeever's interview and counseling of Noah.
 
 See
 

 Holloway,
 

 339 N.C. at 354-55
 
 ,
 
 452 S.E.2d at 243
 
 (defining severe emotional distress as "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so"). Plaintiff's complaint essentially asks the court to speculate on what action exhibited by defendant was extreme and outrageous: performing her job as a licensed clinical social worker?; or meeting with children's parent or grandparents? We note defendant does not allege any type of breach of confidentiality. Unwittingly or not, plaintiff's complaint causes one to speculate that the allegations of sexual abuse upon his children was a major concern to the trial court and led to the two year no contact order against plaintiff. From this, one could
 
 *373
 
 further infer that plaintiff's own actions, not those of defendant McKeever, provided the impetus for what plaintiff claims as the denial of "substantive and meaningful contact with the Boys."
 
 [3]
 
 Thus, as plaintiff failed to allege facts to show that defendant's conduct amounted to extreme and outrageous behavior, it was proper for the trial court to dismiss plaintiff's claim of intentional infliction of emotional distress. Further, plaintiff has not shown that he suffered from severe emotional distress (neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition).
 

 For the aforementioned reasons, we overrule plaintiff's argument.
 

 *420
 

 II
 

 Next, plaintiff argues that the trial court erroneously usurped the function of the fact-finder by concluding the harm caused by defendant McKeever was unforeseeable. Alternatively, plaintiff argues that the complaint establishes foreseeable harm sufficient to state a claim for negligent infliction of emotional distress. We disagree.
 

 Our cases have established that to state a claim for negligent infliction of emotional distress, a plaintiff must allege that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress (often referred to as "mental anguish"), and (3) the conduct did in fact cause the plaintiff severe emotional distress. Although an allegation of ordinary negligence will suffice, a plaintiff must also allege that severe emotional distress was the foreseeable and proximate result of such negligence in order to state a claim[.]
 

 Ruark Obstetrics,
 

 327 N.C. at 304
 
 ,
 
 395 S.E.2d at 97
 
 (citations omitted).
 

 On appeal, plaintiff contends that his complaint makes numerous allegations that, when treated as true, establish defendant McKeever had a duty to refrain from negligently interacting with Noah and Ms. Shapiro. Defendant appears to argue, albeit indirectly, that his allegations show that it was foreseeable to defendant McKeever that plaintiff would be subject "to multiple investigations by the authorities [that] would unreasonably interfere with, and suspend for nearly three years, Plaintiff[ ]'s relationship with his children." We disagree.
 

 There are no allegations in plaintiff's complaint which indicate that it was reasonably foreseeable that McKeever's conduct-i.e. her interview and counseling of plaintiff's child-would cause
 
 plaintiff
 
 severe emotional distress or mental anguish.
 
 See
 

 Holloway,
 

 339 N.C. at 354-355
 
 ,
 
 452 S.E.2d at 243
 
 (defining "severe emotional distress" as "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so"). Accordingly, we overrule plaintiff's argument.
 

 AFFIRMED.
 

 Judge GEER concurs in result by separate opinion.
 

 Judge TYSON dissents.
 

 GEER, Judge, concurring in the result.
 

 *421
 
 I agree with the majority opinion that the trial court properly granted defendant McKeever's motion to dismiss, but I reach this conclusion based on somewhat different reasoning. I, therefore, respectfully concur in the result.
 

 With regard to plaintiff's claim for intentional infliction of emotional distress ("IIED"), the majority opinion holds that
 
 *374
 
 plaintiff has failed to state a claim upon which relief can be granted because "Plaintiff [made] conclusory allegations but fail[ed] to assert any facts depicting conduct by defendant McKeever that meet the threshold of extreme and outrageous conduct [.]" While I agree with this conclusion, I agree with the dissent that the following reasoning from the majority opinion is inconsistent with the standard applicable to a motion to dismiss:
 

 Plaintiff's complaint essentially asks the court to speculate on what action exhibited by defendant was extreme and outrageous: performing her job as a licensed clinical social worker?; or meeting with children's parent or grandparents? We note defendant does not allege any type of breach of confidentiality. Unwittingly or not, plaintiff's complaint causes one to speculate that the allegations of sexual abuse upon his children was a major concern to the trial court and led to the two year no contact order against plaintiff. From this, one could further infer that plaintiff's own actions, not those of defendant McKeever, provided the impetus for what plaintiff claims as the denial of "substantive and meaningful contact with the Boys."
 

 In deciding a motion to dismiss, the factual allegations must be read in the light most favorable to the plaintiff. The majority opinion, however, draws an inference in favor of defendant McKeever.
 

 I do not believe that drawing this inference is necessary given that the allegations in the complaint are not sufficient standing alone to rise to the level of IIED. "[T]he initial determination of whether conduct is extreme and outrageous is a question of law for the court:
 
 'If the court determines that it may reasonably be so regarded,
 
 then it is for the jury to decide whether, under the facts of a particular case, defendants' conduct ... was in fact extreme and outrageous.' "
 
 Johnson v. Bollinger,
 

 86 N.C.App. 1
 
 , 6,
 
 356 S.E.2d 378
 
 , 381-82 (1987) (quoting
 
 *422
 

 Briggs v. Rosenthal,
 

 73 N.C.App. 672
 
 , 676,
 
 327 S.E.2d 308
 
 , 311 (1985) ). " 'Conduct is extreme and outrageous when it is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' "
 
 Johnson v. Colonial Life & Accident Ins. Co.,
 

 173 N.C.App. 365
 
 , 373,
 
 618 S.E.2d 867
 
 , 872 (2005) (quoting
 
 Guthrie v. Conroy,
 

 152 N.C.App. 15
 
 , 22,
 
 567 S.E.2d 403
 
 , 408-09 (2002) ). "[T]his Court has set a high threshold for a finding that conduct meets the standard."
 
 Dobson v. Harris,
 

 134 N.C.App. 573
 
 , 578,
 
 521 S.E.2d 710
 
 , 715 (1999),
 
 rev'd on other grounds,
 

 352 N.C. 77
 
 ,
 
 530 S.E.2d 829
 
 (2000).
 

 In deciding whether the conduct alleged here was extreme and outrageous, it is necessary to parse through our existing case law to determine exactly what kind of conduct alleged is sufficiently "atrocious" or "intolerable in a civilized community" in order to withstand a motion to dismiss for failure to state a claim for relief.
 
 Johnson,
 

 173 N.C.App. at 373
 
 ,
 
 618 S.E.2d at 872
 
 . In
 
 West v. King's Dep't Store, Inc.,
 

 321 N.C. 698
 
 , 705-06,
 
 365 S.E.2d 621
 
 , 625-26 (1988), our Supreme Court found that the behavior of a store manager in publicly accusing two patrons of shoplifting and threatening legal action against them, even after they presented their receipt for purchase, was sufficient to withstand a motion for a directed verdict dismissing their claims for IIED. Likewise, in
 
 Turner v. Thomas,
 
 --- N.C.App. ----, ----,
 
 762 S.E.2d 252
 
 , 264 (2014),
 
 disc. review allowed,
 

 367 N.C. 810
 
 ,
 
 767 S.E.2d 523
 
 (2015), this Court found a plaintiff's complaint sufficiently pled a claim for IIED when the complaint alleged that "defendants ...-public officers-essentially manufactured evidence to negate plaintiff's self defense claim" in plaintiff's "highly publicized" prosecution for a murder of which he was later exonerated.
 

 In
 
 Turner,
 
 we juxtaposed the facts of that case with the facts in
 
 Dobson,
 
 where a department store employee exaggerated a report of child abuse against a store customer and reported it to the Department of Social Services.
 
 Dobson,
 

 134 N.C.App. at 575
 
 ,
 
 521 S.E.2d at 713
 
 . We found that "[i]n
 
 Dobson,
 
 the defendant was a private citizen whose false accusations of criminal conduct merely served to initiate an investigatory process. The defendant's conduct in
 
 Dobson
 
 was not considered outrageous in part due to the existence of an independent investigatory process that served to protect the plaintiff
 
 *375
 
 from further proceedings based on false accusations."
 
 Turner,
 
 --- N.C.App. at ----,
 
 762 S.E.2d at 265
 
 .
 

 I find the distinction between
 
 Turner
 
 and
 
 Dobson
 
 applicable here. Defendant McKeever was not a "public officer," as were the state agents
 
 *423
 
 in
 
 Turner,
 
 but was a private citizen performing her work as a licensed clinical social worker, leaving further investigation of the child abuse allegations to the appropriate authorities. Furthermore, I would point out that plaintiff makes no allegations that defendant McKeever intentionally " manufactured evidence" against plaintiff and makes no allegations that defendant had knowledge of-and ignored-prior unsubstantiated allegations of child abuse against plaintiff. Thus, there is a common element in
 
 Turner
 
 and
 
 West
 
 that is not alleged against defendant McKeever here: the intentional and knowing disregard of facts that could potentially exonerate or call into question plaintiff's allegedly criminal conduct.
 

 Therefore, I agree with the majority opinion that plaintiff has failed to sufficiently allege conduct rising to the level of IIED, but I reach that conclusion based on the similarity of this case to
 
 Dobson
 
 and the material distinctions between this case and
 
 Turner
 
 and
 
 West
 
 . I cannot agree with the dissenting opinion which states that "defendant McKeever used suggestive questioning and other techniques specifically aimed at eliciting a false allegation of sexual abuse...." Although the allegations in the complaint indicate defendant McKeever's questioning was professionally negligent, the complaint does not allege facts sufficient to allow an inference that defendant McKeever's conduct was intentionally aimed at eliciting a false accusation from N.P. or that defendant McKeever willfully and knowingly disregarded facts that would exonerate plaintiff, as was alleged in
 
 Turner
 
 and
 
 West
 
 . I, therefore, would hold, as the majority does, that the trial court properly dismissed plaintiff's IIED claim as asserted against defendant McKeever.
 

 Turning to plaintiff's claim for negligent infliction of emotional distress ("NIED"), I would hold that the trial court properly dismissed that claim on the grounds that plaintiff has failed to allege facts sufficient to show that he has suffered severe emotional distress amounting, as required by the Supreme Court, to a "type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so."
 
 Johnson v. Ruark Obstetrics & Gynecology Assocs.,
 

 327 N.C. 283
 
 , 304,
 
 395 S.E.2d 85
 
 , 97 (1990). Plaintiff has alleged only that he has suffered and will continue to suffer severe emotional distress, including ... mental anguish [ ] [and] depression. I would hold that this allegation is not sufficient to meet the standard set in
 
 Johnson.
 

 This Court has held that in order to withstand a motion to dismiss for failure to state a claim, the allegations of distress must contain "the type, manner, or degree of severe emotional distress [the plaintiff] claims to have experienced."
 
 Horne v. Cumberland Cnty. Hosp. Sys.,
 

 *424
 

 Inc.,
 

 228 N.C.App. 142
 
 , 149,
 
 746 S.E.2d 13
 
 , 20 (2013). Although "chronic depression" is a condition identified in
 
 Johnson
 
 as sufficient to support a claim for NIED,
 
 327 N.C. at 304
 
 ,
 
 395 S.E.2d at 97
 
 , plaintiff here has not alleged any other facts indicating a diagnosis of or treatment for his depression or that his depression was disabling in any respect.
 
 See
 

 Fox v. Sara Lee Corp.,
 

 210 N.C.App. 706
 
 , 715,
 
 709 S.E.2d 496
 
 , 502 (2011) ("Thus, Plaintiff's allegations, construed liberally in her favor, suggest that she had been placed on medical leave, had 'a complete nervous breakdown[,]' and became unable to manage her affairs, all at around the same time.") Even construing the complaint liberally, I cannot find plaintiff's allegations of severe emotional distress sufficient to establish a claim for NIED and, therefore, agree with the majority opinion that the trial court properly dismissed that claim as well.
 
 See also
 

 Pierce v. Atl. Grp., Inc.,
 

 219 N.C.App. 19
 
 , 32,
 
 724 S.E.2d 568
 
 , 577 (2012) (holding that plaintiff failed to sufficiently allege severe emotional distress when complaint simply alleged that plaintiff experienced serious stress that severely affected his relationship with his wife and family members). Consequently, I concur in the result.
 
 *376
 
 TYSON, Judge, dissenting.
 

 The plurality and the concurring in the result only opinions uphold the trial court's dismissal of plaintiff's claims of intentional and negligent infliction of emotional distress for failure to state a claim pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. Their opinions hold plaintiff: (1) failed to allege sufficient facts depicting conduct by defendant McKeever to "meet the threshold of extreme and outrageous conduct;" and (2) failed to allege sufficient facts to indicate it was reasonably foreseeable to defendant McKeever that her conduct would cause Plaintiff severe emotional distress. I respectfully dissent from both conclusions.
 

 I vote to hold plaintiff's complaint, taken as true, alleged sufficient facts under "notice pleading" to assert defendant McKeever engaged in extreme and outrageous conduct to satisfy that element of the tort of intentional infliction of emotional distress. I also vote to hold plaintiff alleged sufficient facts to assert it was reasonable for defendant McKeever to foresee her conduct could cause plaintiff severe emotional distress to satisfy that element of the tort of negligent infliction of emotional distress. I would reverse the Rule 12(b)(6) failure to state a claim dismissal by the trial court and remand for further proceedings.
 

 *425
 

 I. Standard of Review
 

 The majority's plurality opinion correctly notes this Court's review of a trial court's grant of a motion to dismiss under North Carolina Rule of Civil Procedure 12(b)(6) is
 
 de novo.
 

 Bridges v. Parrish,
 

 366 N.C. 539
 
 , 541,
 
 742 S.E.2d 794
 
 , 796 (2013).
 

 Numerous cases from our Supreme Court highlight the pleading standard a plaintiff must comply with to survive a Rule 12(b)(6) motion to dismiss: "A complaint is adequate, under notice pleading, if it gives a defendant sufficient notice of the nature and basis of the plaintiff's claim and allows the defendant to answer and prepare for trial."
 
 Burgess v. Busby,
 

 142 N.C.App. 393
 
 , 399,
 
 544 S.E.2d 4
 
 , 7,
 
 disc. review improv. allowed,
 

 354 N.C. 351
 
 ,
 
 553 S.E.2d 679
 
 (2001) (citing
 
 Redevelopment Comm. v. Grimes,
 

 277 N.C. 634
 
 , 645,
 
 178 S.E.2d 345
 
 , 351-52 (1971) ). As a general rule, "a complaint should not be dismissed for insufficiency
 
 unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.
 
 "
 
 Stanback v. Stanback,
 

 297 N.C. 181
 
 , 185,
 
 254 S.E.2d 611
 
 , 615 (1979) (emphasis original) (citation omitted);
 
 see also
 

 Fussell v. N.C. Farm Bureau Mut. Ins. Co.,
 

 364 N.C. 222
 
 , 227,
 
 695 S.E.2d 437
 
 , 441 (2010) ("A trial court should not grant a motion to dismiss unless it is certain that the plaintiff could prove no set of facts that would entitle him or her to relief." (citation omitted)).
 

 II. Extreme and Outrageous Conduct
 

 Applying this standard of review as enunciated by our Supreme Court, the allegations in plaintiff's complaint are sufficient to support the "extreme and outrageous" element of an intentional infliction of emotional distress claim. This Court has held that "whether the alleged conduct on the part of the defendant 'may reasonably be regarded as extreme and outrageous' " is "initially a question of law[.]"
 
 Burgess,
 

 142 N.C.App. at 399
 
 ,
 
 544 S.E.2d at 7
 
 (citation omitted). The alleged conduct in an intentional infliction of emotional distress claim must "exceed[ ] all bounds of decency tolerated by society[.]"
 
 West v. King's Dept. Store, Inc.,
 

 321 N.C. 698
 
 , 704,
 
 365 S.E.2d 621
 
 , 625 (1988).
 

 The plurality opinion concludes plaintiff has "fail[ed] to assert any facts depicting conduct[ ] that meet[s] the threshold of extreme and outrageous conduct[.]" I disagree and conclude the allegations presented in plaintiff's complaint alleged sufficient facts that, if proven, tend to show defendant McKeever's conduct "exceed[ed] all bounds usually tolerated by a decent society [.]"
 

 Id.
 

 *426
 
 Plaintiff alleged the following facts in his complaint: Noah's mother, and plaintiff's former wife, Shapiro, contacted DSS during the pendency of child custody litigation and alleged, without any foundation, Plaintiff had sexually assaulted Noah.
 

 DSS involved the Huntersville Police Department ("HPD"), and both agencies conducted concurrent investigations into Shapiro's allegations. On 19 April 2011, HPD concluded there was no probable cause to arrest or charge plaintiff and closed its investigation
 
 *377
 
 after interviewing, among others, plaintiff, Shapiro, and Noah. The same day, DSS also found the allegations against plaintiff to be unsubstantiated, and closed its investigation.
 

 Defendant McKeever is a licensed clinical social worker who conducted therapy sessions with plaintiff's sons, including 10-year-old Noah, beginning a month later on 19 May 2011. During all therapy sessions, Noah never displayed any signs nor reported to defendant McKeever he had ever been the victim of any sexual abuse perpetrated by Plaintiff or anyone else.
 

 On 9 June 2011, defendant McKeever conducted a forensic interview with Noah "aimed at eliciting ... a report of sexual abuse" from him. Plaintiff alleged defendant McKeever "knew or should have known" she should not have conducted the 9 June 2011 interview in which she allegedly used "overly suggestive questioning," "over-interpretations," and other "means and methods known or that she should have known to produce inaccurate and unreliable results." Plaintiff attempted to communicate with defendant McKeever by leaving a voicemail requesting she contact him, but defendant McKeever never responded or returned plaintiff's call.
 

 As our Supreme Court has stated, when an appellate court reviews "a motion to dismiss for failure to state a claim upon which relief can be granted, N.C. R. Civ. P. 12(b)(6), all allegations of fact are taken as true[.]"
 
 Jackson v. Bumgardner,
 

 318 N.C. 172
 
 , 174-75,
 
 347 S.E.2d 743
 
 , 745 (1986). Taking these allegations as true, as we must, plaintiff contends defendant McKeever, a licensed therapist, and in the total absence of any history, signs, or factual basis, used suggestive questioning and other unreliable methods to purposefully elicit an allegation of sexual abuse by a ten-year-old boy against his father. Noah had never previously made any allegation to defendant McKeever.
 

 Defendant McKeever is alleged to have, along with the other defendants, thereafter "engaged in further conduct that perpetuated and/or
 
 *427
 
 reinforced [Noah's] report, causing further damage." The trial court in plaintiff's and Shapiro's child custody case found as fact the allegations of sexual abuse against plaintiff "were false and that plaintiff 'unequivocally did
 
 not
 
 sexually abuse [Noah].' "
 
 Piro v. Piro,
 
 --- N.C.App. ----,
 
 770 S.E.2d 389
 
 , 2015 N.C.App. LEXIS 118, *2 (2015) (unpublished) (emphasis original).
 

 The plurality posits: "Unwittingly or not, plaintiff's complaint causes one to speculate that the allegations of sexual abuse upon his children was a major concern to the trial court and led to the two year no contact order against plaintiff." "[O]ne could ... infer," the plurality continues, "that plaintiff's own actions, not those of defendant McKeever, provided the impetus for what plaintiff claims as the denial of 'substantive and meaningful contact with the Boys.' "
 

 Under the required standard of review, the trial court and this Court
 
 must
 
 take all allegations of fact as true and cannot weigh those facts.
 
 Jackson,
 

 318 N.C. at 174-75
 
 ,
 
 347 S.E.2d at 745
 
 . In his complaint, plaintiff alleged that as a result of defendant McKeever's conduct, he was denied substantive and meaningful contact with his sons for years and was also forced to spend years in litigation regarding custody and visitation. It is not the duty, nor the province, of this Court under our standard of review of the order dismissing plaintiff's claims pursuant to Rule 12(b)(6) to speculate or question the reason for the no contact order in contravention of plaintiff's well-pleaded allegations of fact stating the reason therefore.
 

 This Court "has set a high threshold for a finding that conduct meets the standard" of extreme and outrageous conduct.
 
 Dobson v. Harris,
 

 134 N.C.App. 573
 
 , 578,
 
 521 S.E.2d 710
 
 , 715 (1999),
 
 rev'd on other grounds,
 

 352 N.C. 77
 
 ,
 
 530 S.E.2d 829
 
 (2000) ;
 
 see also
 

 Johnson v. Colonial Life & Accident Ins. Co.,
 

 173 N.C.App. 365
 
 , 373,
 
 618 S.E.2d 867
 
 , 872 (2005) ("Conduct is extreme and outrageous when it is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." (citations omitted)).
 

 Our Supreme Court has held conduct to be extreme and outrageous in circumstances I find to be much less "atrocious" or "intolerable"
 

 *378
 
 than the allegations made by plaintiff here.
 

 In
 
 Stanback v. Stanback,
 
 our Supreme Court held a plaintiff had properly stated a claim for intentional infliction of emotional distress sufficient to survive a Rule 12(b)(6) motion by alleging the defendant
 
 *428
 
 breached a contract, the breach was "wilful, malicious, calculated, deliberate and purposeful," and that such breach caused him to suffer "great mental anguish and anxiety."
 
 Stanback,
 

 297 N.C. 181
 
 , 198,
 
 254 S.E.2d 611
 
 , 622-23 (1979).
 

 Likewise, in
 
 West v. King's Dept. Store, Inc.,
 
 Mr. and Mrs. West ("the plaintiffs") traveled to a discount department store looking for bargains.
 
 West,
 

 321 N.C. at 699
 
 ,
 
 365 S.E.2d 621
 
 , 622. While at the store, the manager accused Mr. West of stealing merchandise, and threatened to have him arrested if the goods were not returned.
 

 Id.
 

 Mr. West showed the manager a receipt for the allegedly stolen merchandise and asked him not to involve his wife in the dispute, because she was an outpatient at a local hospital and could not handle the aggravation and anxiety.
 

 Id.
 

 at 700
 
 ,
 
 365 S.E.2d at 623
 
 . Ignoring the warning, the manager confronted Mrs. West and also accused her of stealing merchandise.
 

 Id.
 

 The plaintiffs sued the store for,
 
 inter alia,
 
 intentional infliction of emotional distress.
 

 Id.
 

 The trial court granted the defendant's motion for a directed verdict as to the claim, and this Court affirmed.
 

 Id.
 

 at 704
 
 ,
 
 365 S.E.2d at 625
 
 . Quoting the dissenting Judge at the Court of Appeals, our Supreme Court reversed and held the conduct of the store manager was sufficiently extreme and outrageous to survive a motion for a directed verdict:
 

 Few things are more outrageous and more calculated to inflict emotional distress on innocent store customers that have paid their good money for merchandise and have in hand a document to prove their purchase than for the seller or his agent, disdaining to even examine their receipt, to repeatedly tell them in a loud voice in the presence of others that they stole the merchandise and would be arrested if they did not return it.
 

 Id.
 

 (quoting
 
 West v. King's,
 

 86 N.C.App. 485
 
 ,
 
 358 S.E.2d 386
 
 (1987) (Phillips, J., dissenting)).
 

 I believe the allegations that defendant McKeever used suggestive questioning and other techniques specifically aimed at eliciting a false allegation of sexual abuse by a ten-year-old boy against his father, are more "atrocious" and "intolerable" than the facts our Supreme Court found to be extreme and outrageous in
 
 Stanback
 
 and
 
 West
 
 . Plaintiff has alleged facts that, if proven, would constitute extreme and outrageous conduct and fabrication of a false history by defendant McKeever which "exceeds all bounds of decency tolerated by society[.]"
 

 *429
 

 West,
 

 321 N.C. at 704
 
 ,
 
 365 S.E.2d at 625
 
 . The plurality's opinion erroneously weighs the evidence and " speculates" to reach its conclusion to the contrary.
 

 III. Reasonably Foreseeable Nature of Plaintiff's Emotional Distress
 

 The plurality opinion also concludes plaintiff's complaint contains "no allegations ... which would indicate that it was reasonably foreseeable that McKeever's conduct-i.e. her interview and counseling of plaintiff's child-would cause
 
 plaintiff
 
 severe emotional distress and anguish." I disagree.
 

 Sufficient allegations in plaintiff's complaint, if proven, would show plaintiff's severe emotional distress was, or should have been, reasonably foreseeable to defendant McKeever. Plaintiff alleged defendant McKeever: (1) "specifically targeted plaintiff and/or was overly suggesting of improper behavior by Plaintiff" in her questioning of Noah; (2) conducted an interview with Noah "aimed at eliciting ... a report of sexual abuse" against plaintiff; (3) had "knowledge of the risks attendant to her conduct including the risks that DSS ... would investigate and prohibit" plaintiff from visiting his sons; and (4) had knowledge that the risks were imminent and closely related to her conduct and such risks were "the reasonably foreseeable result of [her] conduct." Plaintiff further alleges defendant McKeever knew or reasonably should have known her conduct failed to follow proper policies and procedures.
 

 *379
 
 Taken as true, plaintiff alleges defendant McKeever used inappropriate means and methods in contravention of applicable policies and procedures, to intentionally elicit a false criminal report of sexual abuse by a ten-year-old boy against his father while knowing this conduct imminently risked plaintiff's ability to parent and interact with his sons. These allegations are sufficient to show defendant McKeever's actions were "reasonably foreseeable" to "cause the plaintiff severe emotional distress."
 
 Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.,
 

 327 N.C. 283
 
 , 304,
 
 395 S.E.2d 85
 
 , 97 (1990) (citations omitted).
 

 IV. Conclusion
 

 "All allegations of fact are taken as true[.]"
 
 Jackson,
 

 318 N.C. at 174-75
 
 ,
 
 347 S.E.2d at 745
 
 . At this very early point in the proceedings, plaintiff's allegations, taken as true, are sufficient to show defendant engaged in extreme and outrageous conduct, and that it was reasonably foreseeable her conduct would cause plaintiff severe emotional distress to survive a Rule 12(b)(6) motion to dismiss.
 

 I vote to reverse the judgment of the trial court and remand for further proceedings on plaintiff's claims. I respectfully dissent.
 

 [1]
 

 Pseudonyms are used to protect the identities of the minor children.
 

 [2]
 

 At that time, Michael had yet to be born.
 

 [3]
 

 It is noted that both the dissent and the concurring opinion react to the above comments in this majority opinion that are essentially dicta, as they are speculative and not necessary to a proper
 
 de novo
 
 review of the complaint. The majority opinion does reason, separate and apart from the dicta, that the "facts" in the complaint, as alleged by plaintiff, when taken in the light most favorable to plaintiff, fail to support plaintiff's claim for intentional infliction of emotional distress. The dicta merely reveals how plaintiff's complaint not only fails to allege facts to establish his claim, but alleges facts that support an inference as to why relief cannot be granted.